UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANYSSA A. SANCHEZ, a minor, by LORENTINA SANCHEZ, her Guardian Ad Litem,<br><br>Plaintiff,<br>v.<br><br>BRAWLEY ELEMENTARY SCHOOL DISTRICT, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 14-cv-0564 GPC (BLM)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 24] |

Before the Court is Defendant Brawley Elementary School District's ("Defendant") Motion for Summary Judgment. Def. Mot., ECF No. 24. The motion has been fully briefed. Pl. Opp., ECF No. 31; Def. Reply, ECF No. 33; Pl. Supp., ECF No. 58; Def. Supp., ECF No. 55. A hearing on the motion was held on May 13, 2016. ECF No. 53.

Upon consideration of parties' briefing, oral argument, and the applicable law, and for the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

//

//

## FACTUAL BACKGROUND

Plaintiff Anyssa Sanchez ("Plaintiff") was a sixth-grader at Phil Swing Elementary School ("Phil Swing") in Defendant Brawley Elementary School District during the time the events in the case occurred. Plaintiff's Separate Statement of Undisputed Facts ("Pl. SSUF") No. 5. Anyssa alleges that at Phil Swing, there was an ongoing schoolyard game where, depending on the day of the week, students would play "games" with each other with such names as "flipping the patty," "hotdog on a stick," "vagina bun," and "smack ass," where the students would attempt to do things like flick other students' breasts, knee each other in the groin, and hit each other on the buttocks. *Id.* at No. 9. On January 18, 2013, Anyssa reported an incident to a school teacher where her friend Alexandra was touched in a private area as a result of the game. *Id.* at No. 79. Later on that same day, Anyssa was standing in the lunch line when another sixth-grade student, Isaac, approached her without touching her. *Id.* at No. 8. He then walked up to another student and flicked him in the chest. *Id.* at No. 10. Several seconds later, Isaac approached Anyssa and touched her left breast with a quick, flicking motion. *Id.* at No. 11. Anyssa reacted by kneeing Isaac in the groin, causing Isaac to fall upon the ground. *Id.* at No. 15. During the time of this altercation, at least two staff members were standing seven to ten feet nearby, but did not intervene. *Id.* at No. 25. Anyssa then stayed in the lunch line, got her lunch, and began eating it. *Id.* at Nos. 25–26.

Isaac then reported to Vice-Principal Calunga that Anyssa had kneed him in the groin. Calunga then walked up to Anyssa where she was eating lunch and called her to Calunga's office. *Id.* at No. 28. Anyssa and Isaac were then brought to Principal Dial's office. *Id.* at Nos. 29–30. Dial and Calunga questioned both students and their teachers as to what had occurred. *Id.* at No. 31. Dial then called Anyssa's mother, Lorentina Sanchez, to the school. *Id.* at No. 33. Dial imposed a one-day in-school suspension on Anyssa. *Id.* at No. 39. Isaac was also suspended. *Id.* at No. 86. During the meeting with Principal Dial, neither Lorentina nor Anyssa

protested Anyssa's suspension. *Id.* at No. 35. Both Lorentina and Anyssa allege that Principal Dial showed awareness of the schoolyard "games" being played by the students. *Id.* at No. 79. Subsequently, Anyssa's family protested the suspension once Anyssa explained on the drive home from school that she had acted in self-defense when she kneed Isaac. *Id.* at Nos. 41– 42, 51–52. They also filed a police report documenting the incident on January 21, 2013. *Id.* at No. 49.

Following an appeal process, Anyssa served a one-day in-school suspension on February 8, 2013. *Id.* at No. 59. In addition, she was briefly removed from honor roll and her homeroom teacher told her that she would not be allowed to participate in an honor roll ceremony and receive her honor roll certificate. *Id.* at No. 65. However, following a protest from her mother Lorentina, Anyssa was reinstated on honor roll and allowed to participate in the ceremony and receiver her certificate. *Id.* at No. 66. Anyssa was able to make up the work she missed as a result of her in-school suspension, and her grades did not suffer as a result of the incident. *Id.* at No. 67.

## PROCEDURAL BACKGROUND

Plaintiff initially filed a complaint in California state court alleging four causes of action for: (1) negligence; (2) negligent infliction of emotional distress; (3) statutory violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX") based on peer-to-peer sexual harassment; and (4) statutory violation of Title IX based on retaliation. Compl. 5–9, ECF No. 1-1.

On March 12, 2014, Defendant removed the case to this Court. Notice of Removal, ECF No. 1. On March 19, 2014, Defendant filed a motion to dismiss. ECF No. 3. On June 16, 2014, this Court granted in part and denied in part Defendant's motion to dismiss, dismissing Plaintiff's state law claims for negligence and negligent infliction of emotional distress, but permitting Plaintiff's Title IX claims to go forward. Order Granting in Part and Denying in Part Defendant's Motion to Dismiss ("June 16, 2014 Order") 10–11, ECF No. 8. This motion for summary

judgment followed. ECF No. 24.

On May 20, 2016, the Court conducted a hearing on the motion. On the same day, the Court issued an Order Directing Additional Briefing on the issue of whether self-defense constitutes protected activity under a Title IX retaliation claim. ECF No. 54. Parties submitted their supplemental briefs on May 20, 2016. *See* ECF Nos. 55, 57.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322–23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

## II. Analysis

### A. Title IX Claim Based on Peer-to-Peer Sexual Harassment

Title IX provides, with certain exceptions not at issue here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

For a funding recipient to be liable under Title IX for peer-on-peer harassment, a plaintiff must demonstrate that the funding recipient was: (1) "deliberately indifferent to sexual harassment"; (2) "of which they ha[d] actual knowledge"; and (3) that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school." *Davis ex rel. LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 650 (1999). "[F]unding recipients are deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 648. A funding recipient's liability for such claims is limited to "circumstances wherein the recipient exercises

substantial control over both the harasser and the context in which the known harassment occurs." *Id.* at 645.

Here, there is no dispute that Defendant is a funding recipient. Defendant argues that they were not deliberately indifferent and they did not have actual knowledge, but taking all inferences in favor of the non-moving party, Plaintiff has a colorable argument on those two prongs. There is evidence in the record that the Principal and at least two teachers indicated awareness of the "games" played by the students, indicating actual knowledge. And while the "clearly unreasonable" bar is a high one for the deliberate indifference prong, if teachers and administrators at the school knew that these types of "games" were widespread among the students and took no corrective action, that inaction is arguably clearly unreasonable.

The problem for Plaintiff is the third prong that the sexual harassment be "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school." In *Davis*, the Supreme Court observed that

> Although, in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect, we think it unlikely that Congress would have thought such behavior sufficient to rise to this level in light of the inevitability of student misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment.

526 U.S. at 652–53. The Court also observed that,

> Indeed, at least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect.

*Id.* at 651–52 (emphasis added). Here, we have only a single instance of sexual harassment, and it does not appear to be "sufficiently severe." While Plaintiff

alleges that these schoolyard "games" were widespread, there is only a single instance in which something happened to her. Moreover, Plaintiff did receive disciplinary action, but only in the form of one day of in-school suspension, and her grades did not suffer as a result. By contrast, in *Davis*, the plaintiff suffered from 5-months of sexual harassment from a fellow classmate, which included numerous acts of offensive touching, and experienced a drop in grades. *Id.* at 653–54. Thus, the Court **GRANTS** Defendant's motion for summary judgment with respect to Plaintiff's Title IX peer-on-peer sexual harassment claim.

### B. Title IX Claim Based on Retaliation

To claim retaliation under Title IX, a plaintiff must first establish a prima facie case by showing: (1) protected activity by the plaintiff; (2) adverse school-related action; and (3) a causal connection between the protected activity and the adverse action. *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 724 (9th Cir. 2012)

Defendant argues that Plaintiff cannot assert a retaliation claim because she did not engage in protected activity, such as lodging a complaint with the school regarding Isaac's actions. At the motion to dismiss stage, this Court found that Plaintiff had plausibly alleged protected activity by asserting that "Plaintiff report[ed] the sexual assault to Defendant." ECF No. 8 at 9. However, it is now undisputed that it was Isaac who reported the incident to the Vice-Principal, not Anyssa. *See* Pl. SSUF No. 28. The school then imposed the suspension upon Anyssa. *Id.* at No. 39. While Anyssa and her mother did subsequently decide that Isaac's actions constituted sexual harassment and complain to the school, they did not do so until after the school imposed the suspension upon Anyssa. *Id.* at No. 41–42. Thus, Plaintiff's retaliation claim fails because she cannot demonstrate that she engaged in protected activity.

Plaintiff also argues that "self-defense" constitutes the protected activity for which she was retaliated against under Title IX. In the classic Title IX retaliation case, a school takes adverse action against the plaintiff after the plaintiff complains

of sex discrimination. *See, e.g.*, *Jackson v. Birmingham Bd. Of Educ.*, 544 U.S. 167, 184 (2005); *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 867 (9th Cir. 2014); *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 725 (9th Cir. 2012). Plaintiff has been able to provide no authority supporting the proposition that self-defense can constitute protected activity under Title IX, and other circuits have expressed cogent reasons why courts should be reluctant to so find in the analogous Title VII context. *Cf. Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566–67 (2d Cir. 2000) ("The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination. . . . Slapping one's harasser, even assuming *arguendo* that Cruz did so in response to Title VII-barred harassment, is not a protected activity. While the law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, this notion of 'opposition' includes activities such as 'making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges.' *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). It does not constitute a license for employees to engage in physical violence in order to protest discrimination."). Thus, the Court **GRANTS** Defendant's motion for summary judgment with respect to Plaintiff's Title IX retaliation claim.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 24, is **GRANTED** as to Plaintiff's remaining Title IX claims. The Clerk of Court shall prepare a judgment accordingly.

**IT IS SO ORDERED.**

DATED:  May 25, 2016

　　　　　　　　　　　　　　　　　　HON. GONZALO P. CURIEL
　　　　　　　　　　　　　　　　　　United States District Judge